**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO:  09-123** |
| **MARIA SAMUELS** | **SECTION: "S" (3)** |
| | (Ref: 12-1657) |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Maria Samuels' petition brought under 28 U.S.C. § 2255

to Vacate, Set Aside or Correct Her Sentence (Doc. #418) is **DENIED**.

## BACKGROUND

This matter is before the court on a Maria Samuels' petition brought under 28 U.S.C. § 2255

to vacate, set aside or correct her sentence. Samuels argues that her guilty plea and sentence are

invalid because: (1) she was incompetent to stand trial; (2) she received ineffective assistance of

counsel because her attorney did not request a competency hearing prior to advising her to plead

guilty and failed to relay the full nature of the offense charged and the effects of the underlying acts

on the sentence; and, (3) her plea was involuntary because the factual basis stated that she was not

involved in Treyor August's murder, but the sentencing guideline cross-reference for murder was

applied in her case.

On December 4, 2009, Samuels was charged in a superseding indictment for her involvement

in a mail and wire fraud scheme that resulted in the murder of her cousin, Treyor August.

Specifically, Count 1 charged Samuels with conspiracy to commit mail and wire fraud in violation

of 18 U.S.C. § 371; Count 2 charged Samuels with mail fraud in violation of 18 U.S.C. §§ 1341 and

2; and, Counts 6 and 7 charged Samuels with wire fraud in violation of 18 U.S.C. §§ 1343 and 2.

On January 10, 2011, a jury trial on the charges against Samuels and four of her co-defendants[1] commenced.  On January 11, 2011, Samuels pleaded guilty to Count 1 pursuant to a negotiated plea agreement wherein the Government agreed to dismiss the remaining charges against her, and Samuels waived her appellate and collateral review rights.  The Factual Basis signed by Samuels in connection with her guilty plea explains her involvement in this matter as follows:

> The defendant, MARIA SAMUELS ("M. SAMUELS"), was living with Jermaine Surtain ("Surtain") and Christina August on Friedrichs Road, Gretna, Louisiana, in July 2003.  M. SAMUELS knew that Surtain was drug dealing and bringing his crack and cash home with him.  M. SAMUELS and Surtain learned that drug money of Surtain had been stolen from the apartment and believed that Treyor August ("Treyor"), Samuels' cousin, to have been the thief.  M. SAMUELS later learned from Surtain that he had confronted Treyor about the theft, Treyor refused to pay, and Surtain vowed to "get him."  M. SAMUELS attempted to convince Surtain not to harm Treyor and also warned Treyor.
>
> M. SAMUELS and Surtain separated and Surtain later went to federal prison.  M. SAMUELS had Surtain's baby in April 2004 but allowed her parents to raise the child.  M. SAMUELS knew that David Samuels ("David") had taken out life insurance policies on Treyor August without Treyor's knowledge.  M. SAMUELS learned that David, David's mother and she (Maria) had all been named as beneficiaries on the policies.
>
> On April 25, 2004, M. SAMUELS learned from her family that Treyor had not returned home Sunday morning, April 25, 2004, his birthday.  M. SAMUELS also learned from David that he went to the morgue and identified Treyor's body.  While everyone else believed that Treyor was alive, David knew that he was dead because David plotted Treyor's death. M. SAMUELS also became aware that David had provided his green van to Charles Moss ("Moss") so that Moss could transport Treyor to a club that Surtain frequented.  She learned soon after Treyor's murder that Surtain, conspiring with David and Moss, murdered Treyor so that they could collect on the insurance policies that David procured through Stefan James.
>
> Within 48 hours of the murder, M. SAMUELS called Christina August and told her that Treyor was killed by Surtain, David and Moss.  M. SAMUELS also told Paul Washington who was living with her at the time how the murder of Treyor

---

[1] Two other co-defendants pleaded guilty prior to the commencement of the trial.

occurred.  M. SAMUELS received her information from David and played no part in the murder of Treyor.

M. SAMUELS was told by David that Surtain was threatening David if he did not pay Surtain from the insurance money. M. SAMUELS learned that in 2006 Surtain was living rent-free in David's residence on Tullis Street.

David discussed with M. SAMUELS making a claim for the $25,000 in benefits on the BaltLife policy in which she was the beneficiary. She agreed to follow the claim through, knowing that the policies were fraudulently obtained without Treyor's consent, and knowing that David had a hand in the murder of Treyor.  She also knew that David did not intend to share the proceeds with the August family.

In June 2004, after Treyor was killed, David, M. SAMUELS and Stefan James caused to be submitted to BaltLife a claim form on behalf of M. SAMUELS requesting the payment of the death benefits on the policy of $25,000 to M. SAMUELS as beneficiary, receipt of which was acknowledged on or about June 9, 2004, by BaltLife.

On or about June 7, 2004, in the Eastern District of Louisiana, David, Stefan James and M. SAMUELS did knowingly cause to be placed in the United States mail, in Gretna, Louisiana, the fraudulent Claimant's Statement to Baltimore Life Insurance Company, in Owings Mills, Maryland, for the purpose of M. Samuels receiving life insurance benefits, to which she was not entitled.

M. SAMUELS knew that Theresa Samuels and David were not only assisting M. SAMUELS in making the claim on the BaltLife policy but that they were also making a claim in the second Treyor August policy in which Theresa and David were beneficiaries.  All the individuals were aware that the policies were obtained fraudulently and that the claims were a fraud. David repeatedly questioned her as to whether she had received the $25,000 from BaltLife.

On or about November 9, 2004, in the Eastern District of Louisiana, after BaltLife refused to pay the death benefits of the policy for failure to truthfully respond to questions in the insurance application and sent the refund premiums paid to M. SAMULES as owner of the policy, she deposited a portion of those funds into her ASI Federal Credit Union account.  David asked her for the premium refund and was upset that she had not given it to him.

When the ATF agents interviewed M. SAMUELS in April 2008, she was not truthful when she provided the "story" that she only learned of the policies when David provided her the claim form in which to sign.

M. SAMUELS knows that David did not obtain the life insurance policies on Treyor to assist the August family.

On September 22, 2011, Samuels was sentenced to serve 60 months in the custody of the Bureau of Prisons, followed by a two-year term of supervised release, which included the special condition of a mental health evaluation.  The court did not impose a fine.

Samuels did not file a direct appeal with the United States Court of Appeals for the Fifth Circuit.  On June 25, 2012, Samuels filed the instant § 2255 petition.

## ANALYSIS

### A.      Legal Standard

Relief under §2255 "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Segler, 37 F.3d 1131, 1133 (5th Cir. 1994) (quoting United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam)).  Accordingly, "[a] defendant . . . may not raise an issue for the first time on collateral review without showing both 'cause' for [her] procedural default, and 'actual prejudice' resulting from the error." United States v. Shaid, 937 F.2d 228, 232 (5th Cir. 1991).  A defendant can establish "cause" by showing that an objective impediment that is external to her defense prevented her from raising a claim on direct appeal. United States v. Flores, 981 F.2d 231, 235 (5th Cir. 1993).  To show "actual prejudice" the defendant must demonstrate not just the possibility of prejudice, "but an actual and substantial disadvantage, infecting [her] entire [proceedings] with error of constitution dimension." Shaid, 937 F.2d at 233.  However, the defendant need not show cause and actual prejudice if the government fails to raise the procedural bar in the district court. United States v. Gaudet, 81 F.3d 585, 589 (5th Cir. 1996).

In this case, Samuels did not file a direct appeal.  However, the Government did not raise the procedural bar in its memorandum in opposition to Samuels § 2255 motion.  Instead, the Government addressed the merits of Samuels' claims.  Therefore, Samuels is not required to show cause and actual prejudice regarding her procedural default. See id.

Pursuant to § 2255, a prisoner in custody under a federal court sentence may seek relief on four grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or, (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255.  If the district court determines that a petitioner is entitled to relief under §2255, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence [her] or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).  Pursuant to § 2255, the district court must grant a petitioner a hearing to determine the issues and make findings of fact and conclusions of law unless "the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." United States v. Bartholomew, 974 F.2d 39, 41 (5th Cir. 1992).

**B.      Samuels' Plea Agreement; Waiver of Right to Contest Conviction**

In her signed plea agreement, Samuels waived "her right to contest her conviction and/or her sentence in any collateral proceeding, including proceedings brought under . . . Title 28, United States Code, Section 2255, on any ground, except that [she] may bring a post conviction claim if [she] establishes that ineffective assistance of counsel directly affected the validity of [her] waiver of appeal and collateral challenge rights or the validity of the guilty plea itself."

Samuels claims her plea was not informed and voluntary due to ineffective assistance of counsel.  Specifically, Samuels argues that she received ineffective assistance of counsel because

her attorney did not request a competency hearing prior to advising her to plead guilty and failed to

relay the full nature of the offense charged and the effects of the underlying acts on the sentence.[2]

## C.      Samuels' Ineffective Counsel Claim

To succeed on a claim of ineffective assistance counsel, petitioner must show: (1) that her

counsel's performance was deficient; and (2) that her counsel's deficient performance prejudiced

her defense.  Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).  Petitioner must show that

counsel's errors were serious enough to deprive her of a fair trial, of which the result would have

been reliable.  Id.  Petitioner must further show "a reasonable probability that but for trial counsel's

errors, the defendant's . . . sentence would have been significantly less harsh."  United States v.

Frank, 230 F.3d 811, 815 (5th Cir. 2000).  "The prejudice prong is satisfied, however, when a

deficiency by counsel resulted in specific, demonstrable enhancement in sentencing – such as an

automatic increase for 'career' offender or enhancement for use of a handgun during a felony –

which would not have occurred but for counsel's error."  Id.

### 1.      Competency

Samuels argues that her attorney should have requested a competency hearing before she

pleaded guilty to Count 1.  At Samuels' change of plea hearing, the court inquired into Samuels'

competency to enter a guilty plea and whether her plea was entered knowingly, willingly and

voluntarily.  In response to the court's questions regarding her mental state, Samuels responded that

she was under the care of a doctor for mental health treatment, that she was diagnosed with

---

[2] Samuels also claims that her plea was not knowingly and voluntarily made because she was incompetent to stand trial and the factual basis stated that she was not involved in Treyor August's murder, but the sentencing guideline cross-reference for murder was applied in her case.  Both of these claims are encompassed by her ineffective assistance of counsel claim, and will be addressed as such.

depression and anxiety disorder, and that she was prescribed Effexor[3], Ativan[4] and Trazodone[5] for these conditions.   Samuels admitted that she had not taken the medications on the two days proceedings the hearing, but that, whether or not she takes the medication, it does not affect her ability to understand the proceedings.

Samuels' attorney knew of Samuels' mental health issues, and did not indicate that she had a to believe that Samuels' was legally incompetent to enter a guilty plea.  Indeed, Samuels' attorney testified that she was satisfied that Samuels' plea was entered voluntarily and understandingly and with full knowledge of the consequences of the plea.

There was nothing before the court to indicate that Samuels' admitted history of depression and anxiety rendered her incompetent to understand the proceedings and enter a knowing and voluntary guilty plea.  Indeed, the presentence investigation report fully outlined Samuels' treatment history for depression and anxiety and her diagnoses, but it did not indicate that she was in any way mentally incompetent.  Therefore, Samuels' is not entitled to relief under § 2255 for this claim.

## 2.      Nature of the Offense

Samuels claims that her plea was not knowingly and voluntarily entered because attorney failed to relay the full nature of the offense charged and the effects of the underlying acts on the sentence in that Samuels did not understand that the sentencing guideline applicable to murder would apply to her case.

---

[3] Effexor is an antidepressant used to treat depression.

[4] Ativan is used to manage anxiety disorders or for short-term relief of symptoms of anxiety or anxiety associated with depressive symptoms.

[5] Trazadone is used to treat depression.

For a plea "[t]o be knowing and intelligent, the defendant must have 'a full understanding of what the plea connotes and of its consequences.'" United States v. Hernandez, 234 F.3d 252, 255 (5th Cir. 2000) (quoting Boykin v. Alabama, 89 S.Ct. 1709 (1969). "The consequences of a guilty plea, with respect to sentencing mean only that the defendant must know the maximum prison term and fine for the offense charged." United States v. Pearsonu, 910 F.2d 221, 223 (5th Cir. 1990) (quotations omitted). "Due process does not mandate . . . either notice, advice, or a probable prediction of where, within the statutory range, the guideline sentence will fall." Id. (finding that the defendant was entitled to notice of the potential application of recidivism statues that increase the statutory maximum penalty, but not sentence enhancements for recidivism pursuant to the Guidelines).

At Samuels' change of plea hearing, the court informed Samuels that the maximum possible sentence that could be imposed upon a conviction for Count 1, conspiracy to commit mail and wire fraud, is 60 months imprisonment, followed by 3 years of supervised release, and a fine of up to $250,000, or the greater of twice the gross gain to her or twice the gross loss to any person. Samuels indicated that she understood the possible penalties, that the court would consider advisory sentencing guidelines in formulating a sentence and that the court could impose the maximum sentence allowed by law. Thus, Samuels' guilty plea was knowingly entered, regardless of whether she was aware of that the guideline cross-reference for murder would apply in her case, and she is not entitled to relief under § 2255 for this claim.

## CONCLUSION

**IT IS HEREBY ORDERED** that Maria Samuels' petition brought under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Her Sentence (Doc. #418) is **DENIED**.

New Orleans, Louisiana, this   26th day of April, 2013.


**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**